Sentencing Memorandum
*David John*

| | |
|---|---|
| **Subject** | **Date:** September 7, 2020 |
| Defendant Sentencing Memorandum David John (aka David Fondots) Crim. No. (19 CR 10357-RGS) | |

| To | From |
|---|---|
| The Court | David John Defendant |

# Operative Questions about the Plea Agreement Versus the Basis for Loss Calculation and Punishment

**David accepts full guilt and responsibilities for the crimes agreed in the plea and maintains and proves that punishment beyond those elements in General Allegations are incorrect or false. However Constitutional Issues abound in the Governments assertions for punishment beyond Zone A Offense levels sought.**

1. Who was not interviewed by the Government (why)?

2. Have any witnesses or victims lied or submitted false evidence?

3. Are witnesses using the Government to enrich themselves?

4. Is it possible that there has been a fraud committed on the court by victims or others?

5. Have any witnesses or victims lied to law enforcement in adjacent investigations?

6. Has impeachable material of facts used to establish the truth in the matter been suppressed?

7. Was there significant impeachment material suppressed that would have significantly impacted PSR and Loss Calculations?

8. Was exculpatory information withheld to materially skew the PSR and sentencing?

9. Are sentencing recommendations based on false evidence?

10. Did the Government fail to establish the facts and truth of the evidence it collected from witnesses?

11. Is there sworn evidence and statements that disprove the general allegations and sentencing recommendations?

12. Is there significant defense evidence, some previously suppressed that is authoritative which disproves the general allegations and tax calculations almost entirely?

13. Did witness tamper with evidence or commit a fraud on the court?

14. Have there been any intentional 6th & 8th Amendment violations?

15. Was the PSR tainted with false evidence or falsehoods leading to erroneous infrences?

16. Was exculpatory material suppressed to David and Probation office?

17. Was the Probation office permitted to arrive at false conclusions and were false inferences intentionally sown based on the suppression of Brady, Giglio, Jencks, or other information?

18. Could this material have eliminated the reliability of the evidence used for loss calculation and sentencing recommendations?

19. Were there constitutional, rules, policy or violations of law committed by the Government?

20. Is there serious lack of reliability to evidence presented as a preponderance of facts that are known to or should have been known to the Government?

21. Is the reliability of evidence that impacts punishment or unjust fines important to the court?

22. Are all the key elements of the loss calculation unsworn by non-US citizens not accountable to US law, Perjury, and consequences for lying?

23. Is the Defense the only party that has sworn evidence in its package?

24. Is David the only party that has real documents signed and/or acknowledged by the victims proving defense assertions?

25. Is there a massive amount of defense evidence that show that the victims routinely lied, including falsehoods about what they knew and when they knew it and the impact on loss calculation?

26. Does this evidence include documents signed by the victims they hid from the USA that directly contradict their own false assertions in their statements to the FBI?

27. Is it probable that the loss calculation is 1000% incorrect?  3000%? More?

28. Are there predatory investors that had a scheme to take control of the company?

29. Was another major Boston law firm hired to counter these actions, before there was a civil suit?

30. Was David denied access to 95% of the evidence much of which would prove a false loss calculation and alleged relevant conduct?

31. Does David have authoritative facts and evidence to proof his version of the loss calculation?

32. Has there been a fraud on the court and violation of law and rules without which the court would only be looking at punishment for line 29 and 31 of document $23?

33. Are there emblematic hard facts with sworn statements and signed documents that prove that the entirety of the Victim statement is a web of lies?

34. Did victims in their statements to the Government make scores of false allegations to which David has evidence with their signatures that show their statements to the FBI and USA are without credibility?

35. Is David the only party that submits sworn statements supporting his arguements?

36. Is the Government case absent of any sworn and confronted testimony?

**Questions about the Crime:**

1. Did David commit the crimes in Document #23 line 29 and 31?

2. Is there a need for punishment sufficient but not greater than necessary?

3. Does David regret his actions?

4. Has he accepted responsibility for the crimes in the plea as stated in the Rule 11 hearing?

5. Is it unfair and unjust he is punished for crimes he did not commit or be forced to accept responsibility for crimes he did not commit?

**PRELIMINARY STATEMENT**

The answer to all of the above questions above is YES.  This Sentencing Memo will show that David accepts responsibility for and prays for sentencing in line with the facts of the plea agreed with the Government as stated in the Rule 11 Hearing rather than excessive punishment based on falsehoods.  After reading this sentencing memorandum and its evidence and exhibits and sworn testimony one will find an astounding disparity in the quality of facts and evidence between the government and David's submissions.  This is as unfortunate as it was avoidable. The evidence David provides to establish his recommendations for justice on the crimes is only outdone but the governments quest for excessive punishment.

Moreover, the Defense provides sworn testimony, evidence, and information herein that disproves all the elements of the Government's sentencing recommendations. Furthermore, direct

answers with impeaching information to each of the Government's 17 exhibits is provided and will show with indisputable evidence that was accepted by the victims that the Defendant was entitled to the money he was paid or reimbursed, except for the amounts in line 29 in #23.

David also shows the extreme and excessive calculations for Count II tax fraud and that all he owes is what is stated in Line 31 Document #23.  David will present evidence that is emblematic of the lack of credibility and reliability of thee witnesses, often elements of the business that witness claim had no knowledge, with their own signatures disproving the entirety of the Victim claims for restitution and the USA claims for forfeiture.

The Defendant did not committed crimes as outlined in, and only in Paragraphs 29 and 31 in the #23 and the majority of the Loss Calculation and General allegations. The USA had the evidence that would have shown these allegations to be incorrect. In lieu of the facts, the Government relied on the 4-year-old settled civil litigation with the victims that resorted to breaking the law to extort settlement and who have likely committed a crime in their submissions.

Ultimately the massive suppression of evidence created a flawed PSR and loss calculation. The suppression of evidence that is material or favorable to the accused violates due process regardless of if it was intentional, negligent, or inadvertent.

The Defendant caused himself to be overpaid in the year of the Count I (2015) $3468.49 more than he was owed. However, over the course of his engagement with Mariposa was _underpaid_ $10,396.79.  He has unreported income, without mens rea, that will result in underpaid taxes of $11,927 for 2015.

**The evidence is clear: and is proven-The Pillars of the Government's Argument**

Proven herein is that the entirety of the Governments core elements are extremely erroneous and incorrect.  The erroneous extrapolations driven by misconduct and fraudulent statements by the victims.  However, this is not tantamount to David reneging on a plea.  David has agreed to agreed plea to Paragraph 29 or Count 1 and Paragraph 31 in Count II as agreed. However, the pillars of the governments sentencing memo are built on soft ground.  This memo and its supporting documents disprove the government's case for relevant conduct and their attempt to have excessive punishment.  Although irrelevant to the sentencing that David has no money or assets or job anymore, it is fair to have restitution from future earnings if allowed to work, the accuracy of the amounts minus what has been paid is just.

Government recommendations will be addressed in David's sentencing package providing undisputed evidence of false loss calculation by the government fueled by patently false statements of the witnesses and victims that the Government should have known were false.

1. The defendant should have no restitution to the victims. He owes under $3500 juxtaposed against 200,1000 paid back

2. David does not owe the IRS remotely close to $187,603 and the plea called for giving David 6 months after sentencing if given probation to arrive at a complete and true tax return.

3. If incarcerated none of these Government recommendations can ever be achieved making this a life sentence, a violation of the 8th Amendment, and inconsistent with his plea.

4. There should be no forfeiture beyond the amounts actually taken minus repayments of $200,100

5. Even the PSR did not recommend fines and the defendant has zero ability to pay

6. The defendant should not have any incarceration but probation that allows him to travel internationally and rebuild his career so he can pay his taxes.  At worse a suspended sentence or home confinement.

**Government core arguments:**

The Government arguments are proven false, erroneous, exaggerated and based largely on evidence that given proper and legal discovery would have been invalidated for loss calculation during the PSR process. The contents of this in this Sentencing package will provide the facts and supporting law behind David's assertions.  This Sentencing memo upon a careful read provides the court with the basis for dramatic downward departure to attain justice and a review of the supporting evidence and other files critical.  The least of which is not the objections to the PSR but looking at Exhibits A-0 through A-5a - A-5g essential.  Sworn testimony that proves many of the falsehoods of the statements and clearly show the math behind David's case that he was entitled to the money he took notwithstanding para 29 #23.  Exhibits T-1 though T-7 proving Terra was not fictitious and that the government knew this from suppressed evidence. Exhibits E-1 through E-6 with exculpatory information indicative of the erroneous information, and B1-B15 that also show the victims lied with impunity over and again about almost everything to attain excessive and unjust restitution.

1. *"Fondots transferred more than $205,000 of Victim Company A funds—in addition to his authorized compensation—directly to himself, Family Member 1, and to and on behalf of companies controlled by Family Member 1"*

Proven with undisputed evidence and sworn testimony herein showing the monies were due and owing.

2.  *"in sentencing, the court can rely on a wide variety of evidence not ordinarily admissible in a criminal trial".*

Not if the evidence is false or impeachment and exculpatory evidence is hidden.

3.  *"Nor does he now dispute that he made make the transfers of funds at issue for his own benefit or that of Family Member 1."*

This is sadly inaccurate.  It is a fact that the defendant had due and owing compensation and the government suppressed evidence it had that for a decade David split his pay to his spouse a common practice with all major companies to enable.  Evidence provided herein.  David accepts guilt and responsibility for what he was required to agree to in the plea

4.  *"he had an agreement with the board to limit his compensation"*

This is untrue.  This is addressed herein by other board observers and firsthand witnesses as well as documents and interviews that debunk this.  There was no agreement albeit there was a reduction David took as did 2 other board members temporarily for a specific allocation.

5.  *"He has thus acknowledged that because of this reduction in pay, there was a legal Impeachment"*

This is a comment in a vacuum absent of the context provided.  With the pay reduction which is reflected clearly herein, David did not embezzle or take more than he was owed excepting under $3500.

6.  *"The victim statements confirm that there was no approval or knowledge that Fondots was diverting these funds to Family Member 1 and that no services supporting such charges were provided"*

The Victim statement is packed with lies and much of which proven now with suppressed evidence or with knowledge of their statement David has provided herein proof of the mistruths, exaggerations, and

7.  *"although the United States included a reduction for acceptance of responsibility when it submitted its statement of offense, as Probation has determined, PSR ¶ 44, Defendant now appears to be denying his criminal liability by claiming that he lacked criminal intent, and has additionally denied much of the conduct that was part of the fraudulent scheme and the tax fraud."*

Accepting responsibility is not intent and the USA should not withdraw their reduction since he has maintained the plea namely that he has on the record accepted guilt and responsibility to para 29 and 31.  David admits to responsibility for the crimes and guilt. **That does not mean that he intended to commit fraud nor was that ever a requirement nor what was stated in the Rule 11 hearing without objections from the government**.  The government is incorrectly stating that by denying falsehoods or anything other than those para is David not honoring the plea.  The USA stated in

specific terms that he had the right to deny and refute the rest of the general allegations based on false testimony that has been impeached after revelation of government misconduct suppressing over 90% of the files they were legally obliged to produce.

8. *"He also deliberately filed false tax returns to conceal this embezzled income as well as his regular compensation from Victim Company A from the IRS."*

Now the USA can report state of mind?  On the tax issues there was no Mens Rea, but David should have not negligently assumed he could correct his taxes.  He has accepted guilt and responsibility to the extent laid out in the plea in Para 31 of #23. The false returns were not deliberately done to conceal anything and certainly not embezzled income of less than $3500.  The defendant filed those returns intending the amend once return allowance of $200,000 and all expenses were calculated.  Explained with evidence and law in this document.

9. *Defendant appears to have been a wealthy businessman who lived a comfortable life with a house in Andover and another in Nantucket.*

The government seems to have a problem with factual accuracy he has no house in Andover nor ever lived there. But it's just an error right?  He had a house in Nantucket true.  David is not wealthy nor every has been.

### The Departure Results from a Legitimate, Uncoerced Plea Bargain

David made a plea agreement voluntarily reducing 6 counts to 2. The Government, then absent of the need to abide as assiduously to rules of evidence, presented false evidence and impeachable information to gain a 'conviction' and punishment as if no plea was struck.  The plea was clear in

Paragraph 29 and 31 of Document #23.  This is the legitimate plea for which the David should be sentenced.

### What are the Key Elements to the Counts David is Charged?

The essential elements to determine punishment are:

1.  Did David take more than he was owed? How much?
    a.  David Will prove he was entitled to the monies taken other than the negotiated plea agreement document #23 paragraph 29

2.  Did David underreport his income? How much? Was there mens rea?
    a.  David will show the facts that taxes owed are consistent with paragraph 31 in document #23

3.  Did David create a complex scheme to defraud the company? Can he disprove this entirely?
    a.  The evidence shows that there was no scheme, no conspiracy, and all allegations of such are entirely false and proven so by sworn statements from 5 witnesses and a superiority of evidence and work product shown in David's exhibits and evidence, including suppressed exculpatory evidence recently discovered.

Another key element here is the question; Was David constructively deprived of constitutional rights to materials shared with PSR or suppressed from all that would have allowed this to be proven earlier.

David answers each of these with sworn testimony, affidavits from many knowledgeable of the facts, and with real documents, contracts, board resolutions, and legal documents which authorized and approved his actions.

The Government provides hearsay, false statements, massive omissions with intent to create false inferences on behavior from non-sworn, non-US citizen statements, from notes and information that is years old, promises of documents from witnesses and victims that were never produced or were and still are suppressed.

### How Did We Get Here?

How did we arrive at such a massive incongruency of the plea and the so-called relevant conduct to support unjust and excessive sentencing recommendations?  Why after gaining the 'win' of the plea is the Government hell bent on 8th Amendment violations when the plea was clear and the Rule 11 hearing agreement to the plea be based on the plea as written? Partly because there has been so much stock put into only 2 witnesses, one outside of any reach of law for false statements or incredibly erroneous extrapolations.  But then why does the government let stand such obvious falsities when they are not relevant to get the plea conviction?  Its clear that over 4 years the investigators formed a trust relationship with these persons who appear to have manipulate the government to gain undue financial restitution that they were unable to secure in the civil suit .  Pointing out wildly false statements is not David "blaming" the victim. He is not, his is saying that the victims have shown as we show in these documents that they will do and say anything, including submitting doctored evidence for revenge.  The company failed due to their incompetence and actions.  They blame David for things stating they did not know about company obligations but failed to tell the USA that they are the ones that signed or negotiated the agreements.  David proves that here now he has seen suppressed evidence illuminating their falsehoods.

1. David's lack of awareness of how the PSR process works and the change in rules of evidence in the PSR process put David at a disadvantage. He eventually discovered that

thousands of pages of *exculpatory* evidence were suppressed and curated misleading evidence (to which he was entitled) was given to the Probation Office in order to establish a false confidence that there was a preponderance of facts supporting their loss calculation. This allowed them to tie in false general allegations for relevant conduct, thereby deceiving the Probation office into an excessive punishment recommendation.

2. David was not informed that hearsay and false statements would carry greater weight after the plea, whereby before a plea or in trial such evidence is likely not to have made it to a jury. Therefore, the evidence took on a higher semblance of veracity and 'truth' in the PSR to create the valiance of relevant conduct when, in fact, it was hidden from the Defendant for the entire process. The egregious 6th amendment violations need not be central if the court accepts the sentencing levels of the crime be as stated in the plea para 29 and 31 of the Information.

3. David was not informed that the Government can extract the same punishment by building in unproven relevant conduct as if they went to trial and won 100% + in front of a jury invalidating the nature and purpose of a plea. As example, in addition to the Government "closing the file" on this matter after the plea, the USA dropped 4 of 6 counts only to then *reinsert them in effect as relevant behavior* to result in the most favorable albeit unjust outcome without having to have their contentious evidence and impeachable witnesses ever tested or confronted.

4. For 372 days, the Government illegally withheld and suppressed evidence; 95.3% of all files, thousands of pages. From the first day after his arrest, David and Counsel requested from the USA 20 times in writing evidence that was suppressed. The USA was required by law to disclose this evidence even if it were not requested. Much of this evidence is

clearly exculpatory, proving facts such as David has for decades paid his now ex-wife (then current wife) a split semi-monthly salary for the same amount from his pay. Such a standard HR function, rather, was presented by the Government as an attempt at 'funneling' money as part of a premediated scheme.  In fact, suppressed Brady material shows that, even when he did not have control over any bank accounts when working with companies like Oracle, Sun Microsystems, OnMobile and others, David paid his ex-wife from his salary from every paycheck for decades.

Furthermore, there are suppressed Government files that show that the 'victims' were fully aware and cognizant of David's salary yet led the Government to use lower numbers to amplify their loss calculation.  The Government presented emails as evidence to PSR that omit key parts that clearly demonstrate that these same witnesses were actually aware all along that David's legal compensation was higher.

Government files also show broad false assumptions and assertions regarding expenses.  Evidence show that expenses in the name of the witnesses themselves were actually paid by David and later reimbursed. Rather than presented as legal and legitimate expenses that were fronted and then repaid to the Defendant, the Government presents these expenses as funds that were embezzled and as unaccounted for taxable income.

5. In the minutes before the PSR process was to close, the Government and false witnesses attempted to commit a fraud on the Court with false and doctored evidence, evidence from witnesses that committed perjury themselves in pursuit of other federal investigations.  This caused David to question what was shared with the Probation Office, thereby discovering

the majority of evidence had not been previously shared in spite of legal obligations on the Government to disclose.

6. The evening before the original sentencing the Government dropped thousands of pages, hundreds and hundreds of files on David, while still withholding other evidence that impacts punishment to which he is and was entitled to receive.

**<u>Abuse occurred with material factors</u>** deserving of significant weight were ignored (solely in the hands of the USA).  Improper factors are relied on and proper factors were hidden. The witnesses committed crimes in submitting false evidence and the USA passed this false information on without verifying the facts. The impact of this problem with evidence is thoroughly examined herein.  David shows the impact specifically on the loss calculation and sentencing recommendations, providing for a significant downward departure from those recommendations.

Much of this suppressed and/or manipulated evidence is cited in this document as well as David's in line answers to the USA Exhibits A-R, debunking the victim impact letter and all of their unsworn statements.  David also presents evidence including *sworn affidavits* from persons with first-hand knowledge, contracts, resolutions, and much more.

### Discovery of Brady Material Relative to Punishment

David discovered a trove of suppressed exculpatory information in violation of Brady, Giglio, Jencks, DOJ policy, Rules of Evidence, and Rules of Criminal Procedures.  This material shared only after the close of the PSR process and after over a year of specific request negates the PSR and Prosecution's Loss Calculation and Sentencing recommendation if using USSG. Included was evidence and material which showed:

- *Terra was real* and *not a scheme to divert funds*. THIS IS AN ESSENTIAL ELEMENT. Since the company was real, provided real services, and was a known real entity to all parties, no scheme obviously existed.

- David discovered that the Government had evidence of a history of legal and legitimate split-salary between his accounts and his ex-wife's for decades and as standard in the USA. ANOTHER ESSENTIAL ELEMENT PROVING NO SCHEME AND LEGITIMATE COMPENSATION.

- David found statements and evidence demonstratively showing that his salary taken was correct and well-known by the entire Board of Directors, witnesses, and investors.  This is ESSENTIAL IF DAVID WAS ENTITLED TO THE MONEY HE TOOK OR WAS REIMBURSED FOR.

- David discovered information that, if it had been shared, would have prevented Probation from drawing conclusions of a long-standing scheme and relative behavior used for its recommendations.

### Discovery of Impeachment Material Relative to Punishment

David discovered the evening before the original sentencing date that the Prosecution had vast amounts, and still suppresses other material that impeach both the credibility of the witnesses and the facts they presented used to establish the truth of the matter to such an extent that the inconsistencies, falsehoods, and manipulation by the witnesses now victims may be criminal.

-      David has as part of this Sentencing package and herein authoritative evidence, sworn statements, contracts, resolutions to support his assertions in this document.  The Prosecution relies on hearsay, false evidence, exaggerated statements, unfounded allegations impeached by

suppressed and exculpatory information.  We will put the evidence side by side now he has seen it and denied the opportunity in the PSR.  But suffice to say that David can indisputably prove he was owed most of the money in the loss calculation and a huge portion of that was not subject to taxes or reporting on his taxes.

-       David did not have mens rea for tax fraud and the embezzlement was unintentional but caught up in the happenings of that time David committed serious mistakes, crimes, for which is sorry and admits responsibility.  Consistent with the plea agreement, David maintains that the crimes are limited to Document 23, Paragraphs 29 and 31.  This results into an A level of sentencing on-top of which there are mitigating factors substantiating Level 6 vs 23.

The objections to the PSR and the direct answers in line to each of the USA's Exhibits of Evidence (A-R) take on the qualitative and quantitative elements and will show that David's assertions of his version of a loss calculation are substantiated by facts not opinions.

**David Provides Empirical Evidence Proving his Assertions**

David's Sentencing Memo and supporting package addresses:

1) Challenges to incorrect or incomplete information in the official PSR and Prosecution's Sentencing Memo.
2) Challenges to improperly drawn inferences and inappropriate characterizations in the PSR and Prosecution Sentencing Memo.
3) Information contrary to that before the court SUPPORTED by affidavits, contracts, resolutions of the board, board meeting minutes ratified, largely suppressed or withheld until the evening before the original sentencing date.

16

4) Information favorable to the Defendant concerning such matters as the offense, mitigating factors, and relative culpability.

5) Information which supports sentencing disposition other than incarceration.

6) Use of Lies to secure excessive punishment.

7) David's sentencing proposal.

## What Are the Elements of the Case and the Loss Calculation?

1. Was David due the majority of the money he was paid (minus the amount in #23 para 29)?

   a. Yes it was.  See Exhibit A-0, A-1, A-3, A-4, and sworn testimony in A-5a-g.

2. Were credit card payments and expenses legitimate expenses?

   a. Yes. See Exhibit A-3

3. Were credit card payments and expenses legitimate taxable?

   a. Largely, No. See Exhibit A-2 and A-3

4. Was Terra a legitimate, authorized, and legal vendor that did real work and provided real services entitled to compensation?

   a. Yes. See Exhibits T-6, T-7a, T-7b, T-7b. (This is a large packet showing work product, emails, and contract with Terra Consulting versus hearsay from unconfronted, unsworn, non-US citizen victim and witnesses with an establish vendetta against the Defendant.)

   b. Also, see Exhibit T-1, T-2, T-3 and T-4. (This includes *affidavits* from several witnesses that have worked in the past with Terra, Marie, and David. These witnesses testify that the company was real, did real work of value, and knew Marie was David's ex-wife)

   5.  Has the Government used entirely false, selective, and/or incorrect unreported income and

      expense figures (minus the amounts in #23 Paragraph 31).

        a.  Yes, See Exhibit A-0 and A-2.

Again, YES to all.   David addresses these elements clearly and with authority so that punishment can be met out appropriately and not in violation of the 8th Amendment as excessive. In this case, the Government bought into the self-serving narrative of plaintiff in a settled civil action.

### THE FACTS: DAVID WAS ENTITLED TO THE MONEY

As shown in ***Exhibit A-1 Payments to Fondots, Exhibit A-3 payments and expenses credit cards, and Exhibit A- 4 Loss Calculation, David was entitled to over $618,135.67.***  The majority of this due and owing compensation, regardless if it were paid directly or in-kind or as split-salary to David's ex-wife show, is David had a salary due and owing of $343,535 and $245,000 in permitted company expenses reimbursed.

It is important that David has historically had the same amount split from his salary paid by the employer directly to his spouse as is typical in the United States.   The Government suppressed evidence that shows David had done this for a decade at other companies Exhibit E-4

An amount paid without authorization of over $195,000 is mathematically impossible, apart from the additional preposterous claim, alleged by witnesses, that there is yet $359,000 on top of that.  These figures are **mathematically and empirically impossible** because they, along with the funds paid to Brazil, **far surpass the money that the ever company had**.  (Just as the monies Davis says was raised into the company during the office not backed by facts.  Shares have

a par value and subscription agreement which showed the company raised half of what they claimed making it impossible for David to have taken the amounts they stated, due or not)

The majority of funds went to another set of accounts in the company not controlled by the Defendant.

These empirical claims are factually supported and addressed in detailed exhibit documents previously submitted illustrating that this claim is incorrect.  Herein, the Defendant submits Sworn Testimony of the company lawyer and Secretary that includes sworn Board Resolutions approving David's compensation and authority; sworn copies of duly executed employment contracts; sworn copies of minutes of board meetings; and sworn copies of financial presentations to the company. Exhibit A-5.  These documents definitively evince and prove that:

a) the Defendant was *authorized* to be compensated these amounts and had the authority to execute these contracts.

b) the victims lied, when claiming that they are unaware of these facts.

c) the victims had approved via their official and legal board resolutions.

d) there were no contrary Board votes or resolutions that amended, lowered, or changed David's authority, compensation, or rights as would be required by the bylaws of the company also included as evidence but withheld from the USA by the victims.

**Payments and Expenses Summary from MHG to David's Personal Credit Cards**

*The Company had over $244,041 or reimbursable (not income or taxable) charges on the Defendant's personal cards.*  David took all the risk and was the sole provider of credit to the company. These credit lines provided to the company by David, without which the company would have failed, were part of David's personal credit. The charts in this exhibit illustrate the company's

use and payments as well as any under or over payment by the company for 2014, 2015, and 2016 and, in part, answers USA Exhibit "W2-4 PAYMENTS OTHER" and Exhibit " IRS UNREPORTED INCOME". Only company charges and payments are shown in the supporting evidence from company bank statements and the credit card statements.

The IRS erroneously counted all payments as income. Not only incorrect, this was inflated by over 800%. **Only $16,282 can and was counted as income** and later reflected in amended tax returns. This is addressed in exhibits that address Count II, Tax Fraud. At the time of filing the income portion was unable to be estimated without access to company information, which was blocked by the company, at the time of filing. The Government used only the plaintiff submissions without true reconciliation at the time the Defendant was charged.

With benefit of evidence provided now by the USA, the reconciliation is part of Defense Exhibit A-4 "Payments to Credit Cards." For 2015, the company overpaid its expenses on the credit cards by $6,710.06 or a 3% error against all charges and payments. This small amount was clearly a clerical and accounting error, which occurred when David had to take on double his responsibilities after investors reneged on their agreements. David argues that this amount would qualify for the lowest level of the sentencing guidelines.

### Summary on Compensation Due and Owing

That the Government cannot substantiate in facts by evidence or sworn testimony supported by evidence that David should be punished, make restitution, or forfeiture for more than the amounts in Para 29 of #23, nor can any of its loss calculation be considered for tax fraud beyond line Para 31 of #23.

**<u>A predominance and superiority of evidence</u>** David submits as part of the Sentencing Memo including sworn statements, vendor and employment contracts, resolutions, and sworn minutes of board meetings and supporting documents. These documents prove that the loss calculation for both counts is extremely flawed.

David asserts that the witnesses committed a fraud on the court with false testimony, doctored evidence, mistruths, and willful factual and material omissions. And that the Defendant's rights were violated from the day he was arrested by the Government, hiding 95% of the evidence that clearly impeached both the material facts of evidence central to the loss calculation but also the credibility of the witnesses.

The actions of the Government and victims/witnesses unchecked by proper evidence sharing and fulfillment of the Government's legal responsibility to insure the facts and veracity of the evidence they pass on from 3rd parties allowed the PSR to be tainted. Mistruths, intentional falsehoods, and hearsay became taken as fact, thereby appearing as a "preponderance" of evidence that went unchallenged in the PSR process. This was a direct consequence of the intentional hiding the ball in spite of request, rules, policy, and law for 372 days until the PSR finalized. The result were excessive punishment recommendations, made by false evidence further raising 8th amendment issues.

In this memo and the supporting document, David shows that lines 29 and 32 in the #23 document as the actual plea are correct. Defense also shows that the attempts to spin conspiracies, premeditated schemes, and sophisticated methods such as creating Terra for the purpose of fraud are false and clearly unfounded. Admittedly, David was extremely sloppy, even unseemly, but not intentional or conspiratorial. He will show the following, which entirely invalidate the loss calculation for sentencing levels, restitution, forfeiture, and punishment.

David committed crimes as outlined in, and only in Paragraphs 29 and 31 in the #23. The majority of the Loss Calculation and General allegations is incorrect. In fact, the USA possessed and withheld the evidence that would have shown the allegations and calculations to be incorrect. Instead, the Government relied on the 4 year old settled civil litigation and allegations launched by victims with a vendetta and clear malicious intent and who, in this process, have likely committed many crimes in their submissions.

## IMPACT ON SENTENCING

The evidence presented herein by the Defendant should reduce the Sentence recommendations in the USSG Sentence Table to Offense level 7 or 8, Zone A, warranting probation only with time served against it from the 14 months of current probation requirements the Defendant has assiduously abided.   If the Court deems, this is a Zone B 9-13 level probation is still warranted as a first time, non-violent offender that has presented separately strong mitigating factors and to which, at worse, a suspended sentence alleviating the system from taking in a prison a defendant who is remorseful, has learned his lesson, has been punished for life losing his job and standing, credibility, and reputation in his industry, and has accepted the felony status.

The Defendant also suggests that he have 6 months to finalize the 2014-2016 tax returns with the IRS directly and then enter into a binding payment plan on those giving him 12 months after the completion of the final returns to pay off his past taxes and that the IRS is stayed until this is complete from any actions relating to these returns.

To determine if the state failed to comply with Brady, the Court of Appeals applied the three-prong test developed under *Brady v. Maryland*. That is, whether:

(1) the Prosecution failed to disclose evidence, regardless of the Prosecution's good or bad faith;

(2) the withheld evidence was favorable to the accused; and

(3) that there is a reasonable probability that had the evidence been disclosed, the trial's outcome would have been different.

### LOSS CALCULATION EXTREMELY FLAWED: UNPAID TAXES

The Government Form 4549 is entirely incorrect, laced with mistakes, omissions, and income assumptions that are based on falsified, false, or hearsay evidence that the Defense will show is 900% overstated. Out of the gate, the Government counts expenses reimbursed as income and also fraudulent or criminally acquired income all of which is categorically false. David has shown that the expense the Government claims were income were both due and owing legal compensation and that it was not income but reimbursements for company expenses. David has also shown that the witnesses lied about expenses and that there are even flights booked for these victims that they claim were embezzled income when they were legitimate expenses.

The Government does make mistakes. See attached to Exhibit A-2 and Exhibit D-1 that shows the **IRS apologized for a $100,000 error** destroying David and Marissa's credit, levying all their savings, and lien on the home. The USA and IRS do make mistakes, big ones. And Exhibit A-2 shows that the **Defendant had taxes withheld from the so-called unreported income** from Unemployment. The Government cannot honestly expect David to admit to guilt or at least intent on every sub item of their insane tax calculations which are entirely without basis in tax code. David admitted to under reported income tax due for Count II tax year 2015 of $11,927.

**In spite of taxes withheld in found in suppressed evidence, the government wants to tax it twice in their 4549.** David was unaware that this had to be added to his return at that time of personal stress since he had paid the taxes on that income voluntarily on time. It was a mistake without Mens Rea of Fraud whatsoever. He paid the taxes on that unemployment. This is not

mentioned by the USA.  Where does it end in being required to allow the government to create false impressions and false loss calculation before one screams JUSTICE?

The take-away is that the Government makes mistakes and oversights that can be significant greatly impact the amounts on unreported income and taxes due and calculations therein.  These mistakes are emblematic of the entirety of the calculations used to create this Form 4549 and the loss calculation on taxes.

David should pay his taxes by resolving his tax filings as stipulated in the plea agreement and then have a reasonable period to settle the amounts due.  We ask that the IRS remain stayed against independent action since they have not responded for over 1 year to David about his taxes and have denied he and his ex-wife access to his transcripts and records.  David simply ask that he is punished for paragraph 31 and as per the plea arrive at final filings with the IRS by 6 months after probation begins.


**Answer to "Unreported Income"** *Exhibit A-2 and A-4*

**Only 10.8% of alleged tax due is correct and actually owed**.  Again, in 2008 the IRS made $100,000mistake (**the actual amount due was ZERO)** to which the Defendant has a letter Exhibit A-2 and D-1 from that period admitting this. Without accountability or repaying the many thousands of dollars in damages, this error caused the Defendant's family.

The USA knew where the house was to lien, knew where money was to levy, had 3 years correct address on returns, but it did not know the right address to send a letter?  IRS and USA do make serious mistakes. However, these mistakes should not be able to create an erroneous Form 4549 that will result in a prison sentence.  Indeed, the government seeks prison based on these errors.

i) The Government facts and information included unfounded allegations from time periods not included in the counts.  The Government creates a story line for a scheme that did not exist and are not relevant to the charges often using information that were selectively applied without mentioning other evidence that off sets the facts, mitigates them, or proves there was no intent to commit fraud.

ii) The Under Reported Income/late filed income resulted in under $11,927 in estimated tax due on unreported income for 2015 and charges in Count II.   Defendant accepts guilt and responsibility for facts and information to support less than $12,000

iii) From IRS report to the Government for 2014 Unreported Unemployment Income was "washed out" as stated in this Government evidence exhibit shared with Defense "*Agent did not deduct excess mortgage interest expense or interest expense De minimis adjustment. This is in taxpayers favor"*.   This seems to be suppressed from the PSR process but is clear in the USA Evidence files.

Further <u>taxes were withheld</u> from 2014 unemployment although the Government only shows it as unreported income but not the taxes that were voluntarily withheld already for that income and mistakenly was unaware it had to be declared having not received a W2 for that income.   (Exhibit A-2) By selectively reporting partial facts, the Government creates the impression of greater loss or a higher level of Fraud while not showing that taxes were withheld and without showing intent to commit fraud.  The Defendant accepts responsibility for documents he alone caused to be filed.

iv) Although the charge in Count II is for 2015, there are references to 2014 that are inaccurate in the Government's facts and information and Fondots is unable to accept as true the Facts and Information stated for 2014 on either count or any part of the General Information for 2014.  On both counts there are payments to Fondots that were from his personal funds, much of which already taxed, before the foundation of the company.

**v)** For 2016 the IRS reported to the AUSA "*Agent treated unreported interest income and unreported refunds as a wash with mortgage interest expense. This is in taxpayers favor.*" This calculation INCLUDED IRA distributions and was "washed out". There was no intent to commit fraud on these expenses and were included in 1040X amended returns believing there was time in 2017 to pay back the retirement fund without tax liability. There were several items listed in the IRS report to the USA that their own statements admit, particularly for 2014 and 2016 were the Agent found were **"in the taxpayers favor"** due to significant under reported legally allowed expenses.

**vi)** Although the charge in Count II is for Only 2015, there are references to 2016 that are inaccurate in the Government's facts and information and Fondots is unable to accept as true the Facts and Information stated for 2016.


Exhibit A-2: Under Reported Income

**Summary Facts and Information for Unreported Income: Count II: Tax Fraud**

The Defendant's records, evidence, and calculations show under reported income Count II; 2015 with total estimated tax due of $11,927 on under reported income of $117,684  This is consistent with the plea line 31, #23 which was taxes due of under $19,400 as stated in the Rule 11 Hearing.

Since compensation refunds were being negotiated in the civil suit at the time of filing the Defendant's tax returns were not filed until after final agreement was reached. There was no intent to commit fraud, and these amounts were always intended to be part of now completed Amended Returns 1040X. Several of the alleged unreported income items were either already taxed, or, were to be part of the 2017 returns allowed for at this time for the tax periods or not taxable income. Items highlighted in yellow are actual income as part of 1040X and taxes supporting request for Sentencing Guideline for Under $10,000 tax due from unreported income. The lack of intent expecting to file once negotiations completed in an unjust Civil action. **Please eliminate any upward departure on tax fraud attributed to tax due was from criminal activity since Only $400 (four hundred dollars) can be construed as being from "criminal activity"**

| Key Inputs | |
|---|---|
| **Adjusted** | Adjustment is for the money paid back to Mariposa to settle Civil although not owed |
| **Expenses** | Monies paid as out of pocket reimbursement for businesss operation many described in answers to USA abd IRS Exhibits W2-7, W2-2, W2-3, W2-4, W2-5, W2-6 |
| **Payments to Fondots** | Payments from Fondots Defense Exhibit "Payments to Fondots" including all payments in cash or in-Kind to Fondots for  Compensation from Mariposa and mathing Governement Exhibit W2-1,  W2-6, W2-4, W2-5 and W2-3 |
| **Payments to Terra** | All monies paid to Terra for services rendered to MHG taken from MHG Bank statemnts and Governement Exhibit W2-7 |

| | | | | 2015 TOTALS for Income Calculations | | | | | | Est. **Actual** Tax Due |
|---|---|---|---|---|---|---|---|---|---|---|
| Year | Fondots Payments | Alleged Unreported | Expenses | Income Late File | Return Allowance | Adjusted Income | Diff to Gov | Est. Tax @25% | | |
| 2015 | $ 300,396.76 | $ 437,878.00 | $ 27,424.07 | $ 272,972.69 | $ 155,288.33 | $ 117,684.36 | $ (320,193.64) | $ 29,421.09 | $ | 11,927.00 |

## 2015: year of the charge

| Unreported | Amounts |
|---|---|
| **Alleged** | **$ 437,878.00** |
| **Actual** | **$ 117,684.36** |
| **Potential Tax Due** | **$   11,927.00** |
| **Alledged Tax Due** | **$ 109,469.50** |

The figure below shows the Terra only cut out for taxable income.

Terra Payments and Taxable Income: Actual

| Payment to Terra | Payment | Alleged | Expenses | Income Late File | Diff to Gov | Note | Return Allowance | Taxable Income |
|---|---|---|---|---|---|---|---|---|
| 2014 | $  19,372.00 | $  24,897.00 | 425.00 | $  18,947.00 | $  (5,950.00) | Expenses were business Insurance paid on company behalf. | 0% | $  18,947.00 |
| 2015 | $  58,184.88 | $  46,194.00 | 9,054.12 | $  49,130.76 | $  2,936.76 | Expenses from Para 15 Information and W2-7 USA submission | 100% | $   - |
| 2016 | $  33,713.16 | $  39,571.00 | 3,450.16 | $  30,263.00 | $  (9,308.00) | Expenses From Gov Submission W2-7 line 27 and rebuttal that expenses were Income | 100% | $   - |
| Total | $  111,270.04 | $  110,662.00 | $  12,929.28 | $  98,340.76 | $  (12,321.24) | Total Income to Terra after return Allowance and pay backs is **$18,947** | 81% | $  18,947.00 |

**FONDOTS ANSWER TO AGENT DRAFT- UNREPORTED INCOME**

Count II Tax Fraud Facts and Information:

The Under Reported Income/late file income is addressed in Exhibit "Unreported Income-Late Report" resulting in under $11,920 in estimated tax due on unreported income for Count II. From IRS report for 2014 Item Unreported Unemployment Income was "washed out" as stated by the Government "Agent did not deduct excess mortgage interest expense or interest expense. De minimis adjustment. This is in taxpayers favor".

**Addressing the Government Chart In-Line Below:**

In the chart below at the end of this document, where Column of correct amount is blank, the amount was either double counted by the Government or reclassified by Defendant into proper bucket such as under reported Salary.  This is a hard chart to map as it was prepared in haste from inaccurate data but we attempt to address it logically and factually below.  We cite the source of the information from the USA.

The Green cells show where the numbers were significantly different or simply in favor of the Defendant. The figures in this chart have some variances to other documents because the Government's own documents varied and did not add up entirely.

This chart is cut from the USA evidence and shows a mapping to the limited number of exhibits the Government chose to share.

Only 16% of the USA figures alleged are correct. The rest is both mathematically and legally incorrect. Namely they took every dollar we lent the company on the Defendant's credit and said they were fraudulent charges.  When in fact those charges were not on the company credit card then used by the Defendant.  The company used the Defendant's good credit for free to sustain the business and reimbursed David Fondots.  This is not taxable income.

The Government asserts $528,562 more than is correct (as listed in Exhibit A-2 Under Reported Income-Late Filing).  The actual tax burden is likely under $20,000 for the entire 3-year period.   And only $11,917 for the Count II since the USA dropped the other years in return for a plea.

No Fraud, Late filing without intent will be amended on 1040X with less than 11,927 in late tax payments which should dramatically impact sentencing levels.  If not for the charges here,

David would have been able to file his 1040X within the statute time granted and avoided any fraud charges.

| Key Figures | |
|---|---|
| Tax Rate without deductions | 25% |
| Tax Rate with deductions | 16% |
| Alleged Difference: Income | 346% |
| Alleged Difference: Tax | 912% |
| 2015 Net Taxable Income | $    104,221.73 |
| Actual Income | $    219,528.66 |

## HEARSAY, UNCONFRONTED UNSWORN OPINION, AND LIES

## ERRONEOUS PSR LOSS CALCULATION

There are significant, and substantive objections to the PSR caused by an attempted Fraud on the Court by the witnesses turned victims and suppression of evidence by the Government. The Government must prove the loss attributable to the Defendant by a preponderance of the evidence and the factual findings supporting a sentencing judge's loss calculation as they also can be reviewed by the appellate courts under a clear error standard.  Exhibit A-7 is a full version of David's objections to the PSR that herein is supported by sworn statements (the only sworn statements of the case), signed agreements, resolutions, and indisputable evidence).  We request that the court not consider the paragraphs objected to for sentencing since David was denied a fair process by the suppression of evidence and the false evidence submitted and not proven without question in this Sentencing memorandum and its supporting exhibits.  This includes sworn statements, sworn resolutions that prove David was entitled to much of the compensation that the PSR considered fraudulent for relative behavior, and substantial impeachment information and evidence eliminating the reliability of the witnesses's statements.  False and doctored evidence was also submitted to the Probation Office from foreigners through Andrew Davis that impeaches the entirety of all that Davis and his collaborators submitted or that were taken from a settled civil suit 4 years ago.

The plea had specific amounts in Para 29 and 31 of document 23 to which the Defendant has agreed to accept responsibility and acknowledges wrongdoing even in the case of the tax fraud which is without mens rea.

The rest is 'relevant' conduct which also must establish conspiracy to be considered in a loss above that.

Sentencing judges have agreed with the Defendant's argument that the PSR's calculation was "too speculative," and found a guideline loss of zero. This is particularly true when evidence is not reliable.

United States v. Villa, 589 F. App'x 532 (11th Cir. 2015) ("When a Defendant challenges the loss amount provided in his PSI, the Government bears the burden of establishing the loss by a preponderance of the evidence, and the district court must make factual findings sufficient to support the attributed amount. However, when a Defendant does not object, a court may properly rely on undisputed statements of loss in the PSI, even when those statements are conclusory."); **United States v. Ross, 502 F.3d 521, 531** (6th Cir. 2007) ("[I]f the Defendant raises a dispute to the presentence report, the court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." [quotations and citation omitted]).

The suppression of evidence, the preponderance of false evidence, the fact that the US Evidence is almost entirely hearsay further supports the request that all objected paragraphs are not considered for sentencing.

**KEY ELEMENTS OF LOSS CALCULATION PROVEN FALSE**

| Falsehood from USA And Witnesses | Truth: Facts | Proof | Impact to the case |
|---|---|---|---|
| Fondots Compensation was $90K | $205,000 per year or total of **$333,138.07** for David's Tenure | • Employment Contract<br>• All Proforma Forecast to the board<br>• Board Resolutions | 1) Entire US Loss Calculations are incorrect<br>2) All forfeiture unjustified<br>3) All restitution unjust<br>4) Sentencing levels 13 lower<br>5) PSR incorrect |
| All Credit Card Expenses were Embezzled | Legally Due to David **$284,995.60** in expenses reimbursement showing no embezzlement | • Resolutions of the board<br>• Receipts for travel shared<br>• Full reconciliation of all accounts provided<br>• Davis states there was $1M in legitimate credit card expenses | 6) Loss Calculation false<br>7) Sentencing levels much lower<br>8) PSR Incorrect |
| All Credit Card Expense reimbursement was income | No, it wasn't under law. i.e. **$33,619** for employee travel ignored by the USA and 'victims' as example including victims travel! | • Resolutions of the board<br>• Receipts for travel shared<br>• Full reconciliation of all accounts provided | 9) Loss Calculation incorrect<br>10) Taxes owed significantly lower<br>11) Penalty for income from illegal activity is zero<br>12) PSR Incorrect |
| Terra was fictitious | Terra for many years provided many services at a low price and was well known to the company | • Terra Contract<br>• Affidavits showing Terra Real<br>• Affidavits illustrate falsehoods of Witnesses<br>• Hundreds of documents showing work of Terra | 13) Tax Debt significantly lower<br>14) Money paid to Terra was authorized, legal, and legitimate, not 1 cent stolen<br>15) Allegation or inference to a conspiracy false.<br>16) Sentencing recommendations unfounded in USSG which requires conspiracy link to forfeiture and sentencing levels as relevant conduct.<br>17) Inuendo and any linkage to ex-wife of Defendant falls though entirely<br>18) Illustrates extreme dishonesty of witnesses<br>19) Eliminates justification for added sentencing points for complex scheme<br>20) Lower sentencing points for lack of scheme and lack of betrayal public trust |
| Payments to ex-wife were stolen | Payments to wife, directly or in-kind were legitimate, authorized, legal, and just. | • Split Salary History<br>• Monies were owed to David as part of his compensation and within David's compensation due<br>• Authorized Insurance payments | 21) All Schemes debunked<br>22) Lower sentencing points for lack of scheme and lack of betrayal public trust<br>23) Makes US Loss Calculation false and incorrect<br>24) Eliminates extra sentencing for part of the unpaid taxes from criminal enterprise.<br>25) Eliminates ex-wife as implied but unnamed conspirator and perpetrator |

## CONVICTIONS BASED ON LIES:
### Defining Due Process Protection

The corrupting impact of false testimony on the justice system is profound and corrosive. The Supreme Court has long-since held that the due process clause protects against convictions and punishment based on testimony that the prosecutor knew or should have known to be false.

Despite this precedent, courts have undermined constitutional protection by imposing demanding requirements of Prosecution knowledge, narrowing the definition of false testimony, and holding defendants to an inappropriate standard of materiality. As a result, the law does not provide adequate protection from conviction based on lies.

As shown, David's submitted documents and exhibits showed that the majority of the funds were accounted for or part of the over $618,0000 in authorized payments. David's evidence includes sworn statements from witnesses with first-hand knowledge of Board meetings, employment contracts, true reconciliation of company payments vs. expenses to credit cards, sworn resolutions of the Board authorizing his actions, and minutes of Board meetings. Even USA evidence, which is exculpatory, shows all parties were aware of the Defendant's payments and salary.

Yet, the Government's evidence, largely suppressed are almost entirely hearsay, or falsified, or just false.

Penn State Law Review published Villanova University Law School professor Anne Bowen Poulin summing up the reasons the Government's evidence should be discounted for

relevant conduct and loss calculation when it comes to Sentencing. Poulin asserts that the courts need provide appropriate protection, the requirements a Defendant must meet to receive relief based on the use of false testimony must be clarified in the following ways.

1. *Prosecution should be deemed to have knowledge of the falsity if the Prosecution did not meet its duty to discover that the testimony was false or if the Prosecution had knowledge of contrary information possessed by other Government actors and therefore imputed to the Prosecution.*

The Government did not meet its duty to discover false testimony and as the Government showed how eager it was for anything these alleged victims fed them, the witnesses doubled down with more and more extravagant lies and false evidence.

The Government is also in possession of information from other agencies that show that these victims have lied in the past in a Government investigation but the USA refused to provide this impeachment information.

2. *Second, the false testimony need not rise to the level of perjury.*
3. *Third, the courts should apply the more lenient standard of materiality defined for false testimony cases by asking how the revelation that the witness had testified falsely would have influenced the pleas or sentencing rather than asking what would have occurred had the witness simply given truthful testimony.*

This is the HEART OF THE MATTER: the false testimony was deemed a preponderance of facts by the Probation Office when applying the USSG to an extremely excessive Loss Calculation which is over 97% incorrect.

### Excessive Sentence Based on False Information Violates Due Process

In addition, the court should revisit the law that applies when a Defendant discovers that the Prosecution unknowingly presented false testimony. If the falsity was material, the courts should

conclude that the conviction violates due process despite the lack of Prosecution knowledge. The corrupting impact of false testimony calls for at least this level of protection.

## THE SUPREME COURT PRECEDENT

The Supreme Court has long been committed to the principle that due process forbids the Government from obtaining a conviction or excessive punishment through the use of false testimony. Through a long line of cases, the Court has condemned the Prosecution's use of false testimony. The development of due process protection against the use of false testimony has been intertwined with protection against non-disclosure of exculpatory evidence. A brief review of the Court's decisions in the interrelated strains of due process protection is essential to understanding the issues facing the courts in false testimony cases.

Two cases form the foundation in the line of precedent relating to both false testimony and non-disclosure of exculpatory evidence. This line starts in 1935 with *Mooney v. Holohan*, a false testimony case. In *Mooney*, the prisoner alleged that his conviction violated due process because the "prosecuting authorities" knowingly used perjured testimony, which was the sole basis for his conviction. The Court condemned the state's corruption of the process without considering the precise requirements for such a due process claim.

Mooney v. Holohan, 294 U.S. 103 (1935). *See also* Peter J. Henning, *Prosecutorial Misconduct and Constitutional Remedies*, 77 WASH. U. L.Q. 713, 755 (1999) (tracing protection against use of perjured testimony to *Mooney*); Michael E. Rusin, Comment, *The Prosecutor's Duty of Disclose:From* Brady *to* Agurs *and Beyond.*

The Courts explained: [Due process] is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has contrived a conviction OR SENTENCING through the

pretense which in truth is but used as a means of depriving a Defendant of liberty through a deliberate deception of court by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction <u>and imprisonment</u> of a Defendant is as inconsistent with the rudimentary demands of justice.

The foundational case is a non-disclosure case: *Brady v. Maryland*. In *Brady*, the Court granted the Defendant a new capital sentencing hearing because the Prosecution had not disclosed favorable evidence bearing on sentencing, <u>thus establishing that proof of false testimony was not essential to a due process violation</u>. Even though *Brady* did not involve false testimony, the Court characterized its holding as an extension of *Mooney*. The Court stressed that *Mooney* rested on the "avoidance of an unfair trial to the accused" and not on "punishment of society for misdeeds of a prosecutor."

Due process protection is triggered when the Defendant establishes that the Prosecution, acting with the requisite degree of knowledge, allowed materially false testimony to stand uncorrected. Of many examples against David, **the Government allowed the Probation office to be fed allegations** and information that alleged that David and his ex-wife had a long history of using Terra as a scheme to defraud companies and investors. Yet, the USA suppressed thousands of pages of exculpatory and impeachment evidence that showed that this was false but also showed that Terra and their services were real and provided value. It would have also showed that the alleged victims and witnesses lied, knowingly and that the USA should have determined that by evidence that only the USA had.

The Court held that "the suppression by the Prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the Prosecution." *Id.* at 87. *See* Case

Comment, *The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant*, 74 YALE L. J. 136, 136-45 (1964) (tracing development of Prosecution duty and characterizing the rules as necessary to permit the Defendant to receive a fair trial).

*Brady*, 373 U.S. at 86. Three years later, in 1967, the Court decided two cases, each of which appeared to entail intentional prosecutorial misconduct. In *Giles v. Maryland*, 386 U.S. 66 (1967), the Court granted relief because the Prosecution deliberately suppressed evidence that would have impeached the testimony of the alleged rape victim. Giles v. Maryland, 386 U.S. 66, 72-73 (1967). A plurality of the Court concluded that the state authorities and witnesses may have "deliberately concealed" the information from the court. *Id.* at 75-76. *See also id.* at 99 (Fortas, J., concurring) (stating his belief "that deliberate concealment and nondisclosure by the State are not to be distinguished in principle from misrepresentation").

### Defining the Knowledge Requirement

An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts." A Prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the Defendant.

Also see Pyle v. Kansas, 317 U.S. 213, 216 (1942) (granting relief to Defendant who established that Prosecution knowingly presented perjured testimony and suppressed favorable evidence);  In *Pyle*, the Court cited *Mooney* and held that a state prisoner would be entitled to habeas relief if "his imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities

of evidence favorable to him." 317 U.S. at 215-16.  If David is punished with prison sentence, this may apply.

### Other Protections Against Being Punished Based on False Testimony

*Giglio v. United States*, is a key decision in defining protection from false testimony. In *Giglio*, the Court recognized that the Government's failure to correct false testimony could violate due process even though no one acting for the Government actually knew the testimony was false.

In  David's case, the recommendation of the PSR were based on the Government suppression of evidence that would have impeached the facts and the credibility of the witness testimony that they considered a preponderance of reliable information.

In **Napue v. Illinois**, 360 U.S. 264, 265 (1959), granting relief based on the Prosecution's failure to correct false testimony, which was relevant only to impeach the witness' credibility); Alcorta v. Texas, 355 U.S. 28, 31 (1957), granting relief based on the Prosecution's failure to correct misleading testimony, despite the fact that the testimony was not clearly false. There is predominant and demonstrative evidence that <u>Terra was real</u>; that the witnesses willfully lied about an ongoing scheme; and  that would have showed the witnesses and victims not reliable and  impeachable. There were minutes of board meetings, contracts, and resolutions that the witnesses promised and then never provided (but are provided by the Defendant).  Despite this, the USA did not follow up to verify the allegations and statements of witnesses.

The misleading testimony strengthened the Prosecution case, where more truthful testimony would have corroborated the Defendant's claim and also impeached the witness's credibility, character and intent.

In *Napue v. Illinois,* the Court also applied an inclusive definition of falsity. In *Napue*, the Court granted relief based on false testimony relevant only to impeach the witness. Even though the falsity testimony related only to the witness's credibility, the Court held that the Defendant's right to due process was violated.

The Government further violated David's rights seeking extreme and excessive punishment based on false evidence and a false loss calculation from the PSR based on false testimony and the failure of the prosecutor to validate the false numbers presented by a non-US citizen (living beyond the reach of US law enforcement and the justice system) that remain unsworn and unconfronted.   In challenges based on non-disclosure of favorable evidence, the Court has also recognized that the Prosecution's obligation extends to exculpatory evidence in the hands of others.   The Government refused to provide evidence in the hands of other agencies, that it has seen, that impeach the victims as having a history of schemes, threats to extort by any means enrichment, and have lied to law enforcement.

## REQUIRED CONCLUSION

### Loss Calculation in the PSR Must be Disregarded

The PSR was based on a lot of false information and US and Non-US unsworn hearsay that was knowingly false or exaggerated and presented by witnesses and victims that would have been factually and in their credibility impeached. The result was an excessive punishment recommendation and an entirely false Loss Calculation, which raised the USSG levels from 7 to over 23.  This is the difference between an excessive and long prison sentence of a nearly 60-year non-violent man and probation where he can rehabilitee and pay his taxes.  The lack of credibility of the victims negates their claims for restitution when they have already been extremely overly compensated in a civil settlement and forfeiture that is unjust and an 8th Amendment violation.

### Sentencing Recommendations

**Mitigation**

Articulated in 18 U.S.C. § 3553(a), the parsimony principle requires that courts impose a sentence that is sufficient, *but not greater than necessary,* to comply with the purposes of sentencing.

The Probation Office made and expects the Court to make a "reasonable estimate of the loss, given the available information." In accordance with *United States v. Uddin,* 551 F.3d 176 (2d Cir. 2009).

However, the Government had hidden the ball from the Defense and shared select, erroneous, and entirely impeachable evidence to the Probation Office in the dark of the night. These factors on their own are mitigating denying the Defendant the Right to Speedy Trial due to the delays added to the process from the suppression of evidence.

As shown and upheld by the U.S. Supreme Court the District Court may depart from the guidelines.  This is illustrated in Gail V United States (2007) where the PSR recommended 38 months incarceration for Gail based on USSG however the court sentenced Gail to 36 months of probation.

There are strong mitigations to sentencing that, in addition to discarding the loss calculation that was based on entirely unreliable information and witnesses.  Those are:

**Covid-19 and Incarceration**

By August 2020, 19 of the top 20 clusters of Covid-19 have been found in incarceration facilities. Federal prisons are overcrowded making them more susceptible to Covid-19 and less possible to social distance.

The death rate in prisons from Covid -19 is 4 times higher than outside. According to the NCCCJ comparing incarcerated and non-incarcerated populations of same sex, age, and ethnicity, non-incarcerated are far less likely to die.

- The Covid-19 Morality rate among incarcerated is 2-4 times higher

- Inmates are 4 times more likely to contract Covid-19

- David is at a vulnerable age over 58 when he would enter and perhaps older once appeals processes would be completed assuming a loss on appeal.

**David's Health**

- David had Bipolar I, which would be severely worsened and potentially life threatening if he is incarcerated.   See Exhibit C-1

**David's Childhood**

- David was physically abused as a child by his father until he left home at 16 and joined the US Army shortly after turning 18.

**David's Military Service**

- ***Military Intelligence and Anti-Terror:*** David served in the US Army Intelligence Security Command (INSCOM) and participated in missions including United States Army Special Operations. David's primary work was in an extremely specialized unit that handled Soviet covert operatives.  It was tasked to collect actionable intelligence in advance of missions by other US special operations forces, especially in counter-terrorist operations.  David participated in the SIGNINT mission to the rescue of General Dozier from the Red Brigade.

- ***Intelligence and Criminal Military Law***: David also served the Staff Judge Advocate General Rhodes as a legal assistant as a lead investigator that lead to the conviction of the

unit's courts martials.  David provided insights and guidance to the head of JAG for all of Intelligence in Europe (<u>See recommendation letter from the head of JAG and 37 letters of commendations attached.</u>

## David's Good Works

- David is a practicing Catholic, member of the Knights of Immaculata, volunteer for prison ministries, and for the Shrine of The Defendant's Lady.

- David is a member of the Knights of Columbus.

- 2 separate letters from priests including a former US Army Chaplain LTC Cody sent to court.

## Unusual Outside Pressure

- David's actions resulted from an unusual amount of outside pressure with the predatory investors reneging on promises to fund the company then tried to steal his shares. Forcing David to 'pay to play' to keep his own company David reduced his salary in order to participate in the round.  This was well known to two (2) other board members, who did the exact same thing but lied in their statements to the USA.

- David had engaged Foley and Larder later in 2015 and January 2016 to find legal remedy to the now 'victims' predatory tactics to steal the company and "cram down" David's majority interest in the company and force elimination of salary after failing to get Board support for their actions. Some of the current 'victims' participated in this but omitted that from statements to the FBI.

### The Offense Resulted in Little or No Harm

- A voluntary settlement between the Defendant and the victims was reached.  The victims, who have changed 3 times since the USA, charged David from a defunct company in which

he was the largest shareholder to the unscrupulous billionaire investors.  Originally, some of the victim's names were removed because of their prior perjury to other Federal agencies.

- The victims directly caused the loss of an offer of $8,000,000 increasing valuation 450% for themselves in their actions to try to abscond with David's shares.  After the victims lied about engaging the investors (Exhibit E-5 Dejoria's ROK Term Sheet). There was no harm from these charges, which resulted in a loss of $3,500 vs the $4,900,000 loss, which they caused David and $3.56M they caused to be lost themselves.

- The victims allege harm from label agreements they claim created loss (not from the actual charges in Count I or II). They claim that David created these 'bad deals' in secret despite the fact that the victims themselves were aware as per sworn statements from Corporate Counsel Falk and approved.  And the victims themselves signed the contracts with Warner and Universal while at the same time lying about knowing about these agreements.  There was no harm.

- The victims got a voluntary settlement well in advance of criminal charges far in excess to any losses ($182,000 plus $28,000 plus $1M in David's shares plus David dropping charges against them regarding their intimidation and threats of physical harm and sexual violence against his then wife and his daughter). There were only a few investors; none were harmed and all compensated years before any criminal charges.

### David's Contribution in the Future

- David has paid over $1M in local, state, and federal taxes in his working life. Over the past three decades, he has created jobs, contributed to the local and national economy, and collaborated with his partners, providers, employees and consumers in producing an

abundance in tax revenue for the United States not only out of legal obligation but civic duty and pride.  David poses no threat to the public or the risk of new crimes if given leniency in sentencing.  In fact, David can only pay his taxes if he is free to seek work, allowing him to travel internationally.

- The real public good has been served in punishment to date. The Defendant's career is ruined. His last job was lost as a direct consequence of the Government's publicity from this suit.  His reputation and credibility are largely irreparable in an industry in which he has worked for decades. The best way to serve the public good is to have David pay past due, current and future taxes.

### Not Mandatory

It is possible that the actions of the witnesses and Government may warrant dismissal with Prejudice. David is prepared to pay the price for the crimes in Para 29 and 31 #23. The Federal Sentencing Guidelines is not mandatory as the United States Supreme Court ruled in *United States v. Booker* that the guidelines violate the Sixth Amendment right to trial by jury.  Now when a district court imposes and we review a sentence for reasonableness, the focal point is on 18 U.S.C. §3553(a) (footnote omitted). In Section 3553(a), there are numerous factors for a court to consider and under *Booker's* remedial holding, the sentencing guideline range is one of those factors. That is, while the guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a Defendant. See e.g., *United  States v. Webb*, 403 F.3d 373 (6th Cir. 2005) ("While a district court must still give some consideration to the appropriate guideline range when making a sentencing determination, a court is no longer bound by the applicable guidelines.)

Good works are not a ticket to heaven or a reduction of sentence under the guidelines *per se*. However, such matters are now a valid consideration under 18 U.S.C. § 3553(a). There are no limitations on the information the Court may consider at sentencing "concerning the background, character, and conduct of a person convicted of an offense." 18 U.S.C. § 3661. As part of its consideration of these factors, the court must recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). David has many good works and remains socially committed now as well as when he served his country in the US Army with samples previously submitted to the docket.

18 U.S.C. § 3553(a) does not direct the Court to give greater weight to some factors over others, and the Court may now consider factors that previously were considered "prohibited factors" or "not ordinarily relevant" under the sentencing guidelines, such as family circumstances, age of the Defendant, mental and emotional conditions, physical condition, employment record, and lack of guidance as a youth. See U.S.S.G. § 5H1.1-

.12 (listing the relevance of certain offender characteristics). See *United States v. Briceno*, No 04-4493, (6th Cir. June 22, 2005):

> In a similar case, this Court recently examined a district court's downward departure from the applicable guideline range based on factors previously discouraged under the mandatory guidelines. *See United States v. Jackson,* 408 F.3d 301, 304 (6th Cir.2005). We observed in *Jackson* that although the downward departure based on previously discouraged and prohibited factors "would almost certainly have been problematic under the Guidelines" prior to the Supreme Court's decision in *Booker,* the court's departure may be reasonable under the now-discretionary guidelines. *Id.* at 304.

Recent Sixth Circuit cases clarify that the advisory guidelines sentencing range is **not**, the *per se* reasonable sentence. *United States v. Webb*, 403 F.2d 373, 385 (6th Cir. 2005) (noting that such a rule would be "not only inconsistent with the meaning of reasonableness, but is also inconsistent with the Supreme Court's decision in *Booker*, as such a standard. 'would

effectively re-institute mandatory adherence to the guidelines.'" *United States v. Williams* 436 F.3d 706 (6th Cir. 2006) held that on appeal "sentences properly calculated under the guidelines will be credited with a rebuttable presumption of reasonableness").

The holding in *Williams* was clarified in *United States v. Marco Eugene Foreman* 436 F.3d 638 (6th Cir. 2006), in which the court explained:

> "although this statement seems to imply some sort of elevated stature to the guidelines, it is in fact rather unimportant. *Williams* does not mean that a sentence outside of the guideline range—either higher or lower—is presumptively unreasonable, it is not. *Williams* does not mean that a guideline sentence will be found reasonable in the absence of evidence in the record that a district court consider all of the relevant 3553(a) factors . . . moreover, *Williams* does not mean that a sentence within the guidelines is reasonable if there is no evidence that the district court followed its statutory mandate to "**impose a sentence sufficient, but not greater than necessary**" to comply with the purposes of sentencing in Section 3553(a)(2).

### David's Request for Punishment to Suit the Crime

It is appropriate to sentence David for the crimes as accepted in the Plea Agreement and due to his assiduous adherence and cooperation with the Probation Office requirements to have a downward departure to level 6.

As a non-violent, first time offender who has accepted responsibility for his wrongs and applying the plea offer that recognizes 2 Level reduction for cooperation to plea. David admitted the truth to his crime. He has demonstrated that there was no complex scheme whatsoever nor were there more than only $300 of taxes due from criminal income.

### Probation vs Incarceration

David was denied speedy trial by the delays and suppression of evidence adding 5 (five) months or longer in restrictive presentencing probation which has caused that additional time without an ability to work or return to society or begin rehabilitation.  On top of the full year of

travel and activity restrictions, 7 of which on severe electronic monitoring.   Therefore, David request for 21-months of probation for both charges to be served concurrently.   If the court determines that prison sentence is appropriate, a Suspended Sentence be granted and that the Defendant is eligible for international travel to pursue business and religious opportunities. However, any sentence of incarceration, even suspended may be excessive considering the first time and non-violent nature of the offense, and the other mitigation factors including the need for rehabilitation.

**Time Served:**

To which the Defendant argues that he has spent 8 months restrained electronically causing David to lose his employment. He has remained unemployed for over a year which has put him and his family under financial and emotional duress.

**Community Service**

He is willing to accept community service and request to support Prison Ministries for any community service he is given.

**Restitution**

There should be no restitution as the victims were already over-compensated in voluntary settlement before any federal charges were made or known of by David.  He has already paid:

- $28,100 as recognized by the Government

- $182,000 in settlement as proven in the PSR

- Total $210,100 which exceeds the amount requested by the USA

- David's compensated the supposed victims well over $1,000,000 when counting stock paid, surrender of claims he had. This cant be ignored or discounted.

**That Civil Settlement was Full and Complete.**

1. The Defendant and his family surrendered their legal claims worth a significant amount they had for the violence and crimes committed against them by the victims (which includes explicit threats of sexual and physical violence directed at the Defendant's teenage daughter).

2. David gave up his shares and his stock and majority ownership of the company as well which had a value of NLT $1,000,000.

3. David also dropped his suit against them which also had value.

With the falsehoods and the fraud that they have committed on this Court, and on the civil court illegally removing David's assets from the reach of the court, there should be no restitution.

The victims know these facts regarding the civil suit, for example, but chose to downplay, misrepresent, or omit the settlement agreement from their narratives. Nor did they ever reply to the Probation Office. Contrarily to the spirit of the law, their unsworn testimony and accusations were given far more value than David's. Their narrative would have been hindered by the facts of the settlement and disabled what is clearly a malicious vendetta.

In contrast, David provided that the agreement to the Probation Office three minutes after it was requested of him.

**Forfeiture**

The forfeiture should be for $3,454 minus the $28,100 already paid the victims so a net of zero forfeiture. The 28,100 was already deducted by the USA in their excessive forfeiture request. It is established law that when ruling on forfeiture to consider if it will cause *life-long* hardships

and if this will deny his ability to make a living which this forfeiture request does in a severe manner.

**Argument:**

The Government seeks an *in personam* forfeiture money judgment against Defendant in the amount of $177,483. This amount is based on proceeds that the USA alleges were obtained by the Defendant on a theory that is unproven, unrelated, and taken from settled civil allegations from 5 years ago, that were unsubstantiated and **untested under any rules of evidence** nor submitted to any evidentiary procedure. Given the nature of the plea and the Rule 11 hearing this request is excessive.

The General Allegations that infer these other 'criminal activities' which are driving excessive request for forfeiture are based on provable falsehoods known to the alleged victims and the Government during the PSR process.  Rights which have been denied during the process to discovery would have disproven the loss calculation entirely (the $177,483 is 980% inflated with false information).

This alleged relevant conduct based on falsehoods was determined without the constitutional protections that guard against unfair punishment, including indictment, a jury trial, proof beyond a reasonable doubt, and confrontation of witnesses.  That is why the plea was made very specifically to document #23 Paragraphs 29 and 31 while explicitly not accepting nor committing to accept responsibility for General Allegations.  The US will argue that Defendant knew the risk of the impact of relative conduct before entering the plea, which he intends to abide by as agreed.

However, Defendant expected a fair playing field and only learned that the Government withheld evidence that it was obliged to produce according to Rules, Law, and Department of

Justice Policy manual so that the Defendant even after a plea can address evidence fairly in the PSR process. ***"A Prosecutor MUST disclose information that either case a substantive doubt upon the accuracy of any evidence – including but not limited to witness testimony-the prosecutor intends to rely on to prove the element of any crime charged…"*** There is a cumulative impact of items of information that are impeachable or were withheld or are false. When several items together can have an impact on sentencing including forfeiture ALL such items must be disclosed and were not disclosed to the Defendant and many not to the Probation Office.

Since the evidence presented was purely hearsay, not sworn or under penalty of perjury the denial of the right to view and present impeachment, it *may* be considered bu*t does not itself represent authority.* Both Brady and Giglio mandate the disclosure of the evidence if it is material to punishment. The Constitution requires disclosure.

A court considering whether a <u>proposed forfeiture violates the Eighth Amendment's prohibition against excessive fines</u> established by the U.S. Supreme Court in *United States v. Bajakajian,* 524 U.S. 321 (1998):

> At sentencing, the burden of proof is on the Government in regard to the base offense level and any enhancing factors. The burden of proof is on the Defendant for any mitigating factors. United States v. Howard, 894 F.2d 1085, 1090 (9th Cir. 1990). Therefore, the Government should bear the burden of proof when it seeks to raise the offense level, and the Defendant bears the burden of proof when he or she seeks to lower the offense level. Id. In other words, even though the Government has the burden of proving the amount of loss, the Defendant has the burden of proving that they are entitled to a credit against the loss amount. United States v. Exec. Recycling, Inc., 953 F. Supp. 2d 1138, 1152 (D. Colo. 2013).

This is problematic when the USA proof was based on knowingly false evidence shared with the Probation Office. Although the law and Rules of Evidence 404 require the Government to disclose this information even if not requested, the US instead had hidden the ball for 372 days and denied request for evidence or ignored them until when they sent a partial production the

evening before the last sentencing date, long after the PSR was completed and the Forfeiture order requested. Including exculpatory evidence recently discovered that disproves the loss calculation as has always been maintained by the Defendant.

### Elements to Consider for punishment Consistent with Para 29 and 31 of #23 as Agreed with the USA vs the Excessive Loss calculation in the Tainted PSR:

There are 4 elements that evidence recently discovered and the affidavit from the corporate counsel and secretary that show, supported by detailed reconciliations, minutes of board meetings, resolutions of the board, and contracts that were clear in what David and others were receiving

1) **Salary Compensation:**

   a) The Prosecution showed no authoritative evidence that David's salary was any less than 343.000 including gross ups etc. Therefore, Government Loss Calculation is entirely erroneous and based on false evidence and, or, lack of any facts.  The facts are that David had a contract and presented his salary, self admittedly by the victims but suppressed by the Government.  David presented sworn testimony confirming his authorities and the process of corporate governance that was required to lower his salary.

   b) David presented his salary and had legal contract ratified by the board.

   c)  The Prosecution has a single email from a witness never interviewed due to their own credibility issues. And they have hearsay from Bernardo with no evidence it is any more than opinion. Never a board room discussion, vote, or resolution to support their claims.

   d) This is a tremendous blow invalidating the PSR and USA loss calculation.

2) **Credit card reimbursements:**

   a) The Prosecution alleges a considerable amount of provocative and terrible sounding purchases as evidence of fraud. However, these charges were personal charges

on his *personal card*. No effort was made to parse out what were allegedly fraudulent expenses and the regular expenses one would find on any personal card. There is no evidence that shows the company paid the Defense's normal, quotidian and family expenses on the personal credit card.

b) They allege Honda payments, and so much more than just **never happened**.

c) To contract, David has prepared a detailed document that shows all official company expenses and those paid by the company.

d) The Prosecution uses only email statements prepared by a man in Brazil with no actual evidence behind it.

e) The Brazilians are permitted to make false statements with no repercussions under US law or out of the reach of US law enforcement and the US justice system.

f) David has prepared a detailed document that shows all official company expenses and those paid by the company.

g) Abacasis and Davis make wild and unfounded accusations while the David, in contrast, produced evidence in this packet that <u>factually demonstrates their own individual travel expenses on David's personal credit card</u>; along with board members names on the tickets bookings themselves, set up by Terra, which they claim were embezzled.

h) David has found that they just put <u>ALL credit card expenses into the fraud bucket</u> admitted in the USA evidence but hidden from the Defendant during the PSR process.

3) **Terra was Real and Not a Scheme or Conspiracy**

a) Staff knew this and engaged Terra in work every day.

b)  Defense has contracts as exhibit and hundreds of files included showing the work Terra did with every single employee such as booking travel on David and Marissa's personal cards since the company had no credit.

c)  David has produced 5 sworn statements about managers working with Terra and his, then, wife for years on real and valid work disproving other statements of Bernardo.  All of these statements are from people that were at the same or more senior level than Bernardo at OnMobile.

4)  **Money Paid to Defendant Family Member**

a)  was split-pay that the Defendant had done at his previous companies as well. Evidence suppressed by the Government showed David paid his ex-wife in split-salary at previous companies as a standard practice. Exhibit E-4

b)  The USA had this evidence from OnMobile but hid that which would have shown zero fraud.

c)  David has proven that he was due and owed the compensation, which he was paid. He admits clearly and without reservation that he was sloppy in paying his salary partly in kind out of laziness and sloppy practices.

d)  And every single penny paid to the family member direct or in-kind is reflected in the exhibit called "Payments to Fondots," which line by line addressed the original Government summary file.

e)  When we asked for the evidence behind the summary long before, then during, then after the plea, the USA hid this as it shows tremendous volume of impeachment and exculpatory material.

**5) Tax Calculations were Entirely Erroneous**

a) David will work with the IRS to settle the final amounts due and establish a payment plan.

b) Proving Items 1 and 2 above dramatically changes the entirety of the taxes due and shows that only a few hundred dollars can be classified as "taxes due from unreported income from a criminal enterprise".

c) There was no criminal enterprise nor were taxes owed substantially on the small amount of money taken by the Defendant. Less than 400 USD due from income under reported from David's Crimes stipulated in line 29 #23.

**The denial of rights impact on Loss Calculation and David's rights.
The court is on FIRM LEGAL GROUND FOR DOWNWARD DEPARTURE
resulting in a sentence of probation, no restitution, and no forfeiture.**

Although David was denied the right to a speedy trial by the constructive suppression of evidence and the use of false evidence to taint the PSR, it is incumbent on the court to pass a just sentence in accordance with the plea that should disregard the PSR and Government loss calculation based on the suppression of evidence that impeached the facts and the credibility of the victims entirely.

To determine if the state failed to comply with Brady, the Court of Appeals applied the three-prong test developed under *Brady v. Maryland*. That is, whether:

(1) the Prosecution failed to disclose evidence, regardless of the Prosecution's good or bad faith;

(2) the withheld evidence was favorable to the accused; and

(3) that there is a reasonable probability that had the evidence been disclosed, the trial's outcome would have been different.

**Firm Legal Ground for a Downward Departure**

Due to these factors the court is on firm legal ground for a downward departure resulting

in a sentence of probation, no restitution, and no forfeiture.

Outlined below are the legal arguments for downward departure on sentencing against the USSG.

The ultimate guiding principle in federal sentences is that they should be "sufficient but not greater than

necessary."

1. 1.     **Lack of reliable information for Loss Calculation juxtaposed against abundance of reliable information that the recommendations for incarceration over representing the seriousness of the Defendant's criminal history.**

The sentencing guidelines allow for a downward departure "if reliable information indicates that the

Defendant's criminal history category substantially over-represents the seriousness of the Defendant's

criminal history or the likelihood that the Defendant will commit other crimes.  This is furthered by the

lack of reliable information on which the relevant conduct suggested in the PSR.  In addition,

1. 2.     **The Victim was an Initiator, Aggressor, or Provoker of the Incident**

The duress introduced by the victims in their constant effort to "Cram Down" the ownership of the

company that David held and their aggressive and constructive effort to dismantle hugely profitable and

value creating new investment to protect to prevent their own dilution drove hasty decisions, and prevented

the Defendant from being able to maintain a level of accounting due diligence rushing financials and tax

returns resulting in errors and mistakes.  David reached out to the corporate counsel and External counsel

at Foley and Lardner months before any incidents to find emergency relief against predatory investors.

David began to consider a derivative shareholder suit against Davis and Sawiris and El Haddad to save

the company

1. 3.     **Non-Drug Related Mental Disorder that is Unrelated to Substance Abuse**

The Defendant's Bipolar Disorder, of which he was a bit ashamed, was triggered and exacerbated these mistakes. The Defendant is willing to take responsibility for those but should benefit from a downward departure to level 6 offense due to the constant predatory actions of the victims that have continued to lie and besmirch all that David was in his role and career.

### 4.  The Departure Results from a legitimate, uncoerced plea bargain

David made a plea agreement voluntarily reducing 6 counts to 2 yet the Government then absent of the need to abide as assiduously to rules of evidence presented false evidence and impeachable information to gain a 'conviction' and punishment as if no plea was struck.  The plea was clear in paragraph 29 and 31 of document #23.  This is the legitimate plea for which the David should be sentenced

### 5.  The Need for Payment of Taxes Outweighs the Need for a Prison Sentence

In order for the David to be able to pay his taxes he needs to remain out of prison, be able to travel internationally, and pursue before he is too old a career and income suitable to pay the Government for taxes he owes.

### CONCLUSION FOR SENTENCING RECOMMENDATION

A predominance and superiority of evidence is part of the Sentencing Memo and supporting documents shows that the majority of the Government's evidence is hearsay or flatly and knowingly false.  There were 3000% more documents and files withheld in violation of law, rules and policy from defense that would have given him the ability to understand the impact of the new to him concept of relevant behavior which has created excessive sentencing levels.

Having had that before Rule 11 as required by law, before the PSR, David could have had knowledge of what the Probation office was seeing. In turn, he could have produced the impeachment and exculpatory material that would have resulted in a much different loss calculation and recommendations under USSG.

**<u>Findings:</u>**

The Defendant committed crimes as outlined in, and only in Paragraphs 29 and 31 in the #23 and the majority of the Loss Calculation and General allegations are incorrect and that the USA had the evidence that would have shown it to be incorrect but instead relied on the 4 year old settled civil litigation with these victims that resorted to breaking the law to extort settlement.  And who have likely committed many crimes in their submissions.

<u>The Defendant overpaid in the year of the count I (2015) $3,468.49 more than he was owed however over the course of his engagement with Mariposa was underpaid $10,396.79.  He has unreported income, without mens rea, that will result in underpaid taxes of $11,927 for 2015, the biggest year, and the only year that was accepted in the plea.</u>

This would reduce the Sentence recommendations in the USSG Sentence Table to Offense level 7 or 8, Zone A, warranting probation only with time served against it from the 14 months of current probation requirements the Defendant has assiduously abided.

If the court deems this is a zone B 9-13 level probation is still warranted as a first time, non-violent offender that has presented separately strong mitigating factors and to which at worse a suspended sentence alleviating the system from taking in a prisoner who is remorseful, has learned his lesson, has been punished for life and has accepted the felony status.

The Defendant also suggests that he have 6 months to finalize the 2014-2016 tax returns with the IRS directly and then enter into a binding payment plan on those giving him 12 months after the

completion of the final returns to pay off his past taxes and that the IRS is stayed until this is complete from any actions relating to these returns.

## OVERALL CONCLUSION

The victims misrepresented their losses and the facts of the case in a fraudulent and criminal manner. MVRA states that a civil restitution award of the amounts lost is mandatory. They received $210,100 already.  They also received $1,000,000 in stock in the company which was in full operation with the customers David produced at the time of his separation.  They also were compensated with David and his family relinquishing a multi million dollar suit for the harm they caused their family through illegal activities.  This was clearly laid out in the settlement agreement.

David has proven with undisputed evidence that he was entitled to the money he was paid directly or in-kind except for $3,458 for count I albeit relevant conduct shows he was under paid over the entirety of his tenure.  However David agreed in his plea focused for Count I in 2015 to accept guilt and responsibility for that amount. The government presented hearsay, unsworn statements, erroneous calculations while David produced contracts, company expenses that were not embezzled NOR taxable income.

Had the government not violated his 4th, 6th and 8th Amendment rights this would have been clear to the court during the PSR process.

David admitted responsibility in guilt as promised in the plea agreement and Rule 11 hearing for up to $3458 in wire fraud and up to $11,927 in unpaid taxes from unreported income, of which only $250 was tax due from his crimes.

His strong remorse and demonstrated effort to rehabilitate, mitigating factors, and cooperation warrant a level 6 offense to which David should receive probation, pay taxes due after an honest effort to reach an agreed return amount.  If any incarceration is deemed appropriate by the court, David request a suspended sentence or home confinement due to his age, bi polar disease, and the Covid 19 impact on older prisoners.

Respectfully submitted,

David John (Fondots)

By: /s/ David John

Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

____/s/  David John

Defendant

Date: October 21, 2020